TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Kyle J. Ortiz

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                       :
In re:                                                 :   Chapter 11
                                                       :
AURORA COMMERCIAL CORP., *et al.*,                     :   Case No. 19-10843 (SCC)
                                                       :   (Joint Administration Pending)
                       Debtors.[1]                     :
                                                       :
--------------------------------------------------------- x


### DECLARATION OF BRENDA DARNELL PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 AND IN SUPPORT OF THE DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

I, Brenda Darnell, being duly sworn, hereby depose and state as follows:

1.      I am a Senior Vice President of Aurora Commercial Corp. and Aurora Loan Services LLC.  In that capacity, I am familiar with the operations, business, and financial affairs of Aurora Commercial Corp. ("ACC") and ACC's subsidiary Aurora Loan Services LLC ("ALS" and together, with ACC, the "Debtors").

2.      I submit this declaration (the "Declaration") pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"):  (a) in support of the Debtors' voluntary petitions for relief filed by each of the Debtors under chapter 11 of title 11 of the United States Code (the

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are as follows:  Aurora Commercial Corp. (3416) and Aurora Loan Services LLC (7742).  The Debtors' corporate headquarters is located at 277 Park Avenue, 46th Floor, New York, New York 10172.

"Bankruptcy Code"); (b) to explain to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and other interested parties the circumstances that led the Debtors to seek relief under Chapter 11; and (c) in support of the motions and applications for relief filed concurrently herewith and discussed herein (collectively, the "First Day Motions").

3.      I have served as the Senior Vice President of ACC or its predecessor since December 2011, and of ALS from 2002 through 2008, and then again since December 2011.  I began working at ALS in May 1998, and I have a total of over 17 years of experience working for the Debtors.

4.      I have reviewed the First Day Motions or otherwise had their contents explained to me and, to the best of my knowledge as I have been able to ascertain after reasonable inquiry, I believe that approval of the relief requested therein is necessary to permit an effective transition into Chapter 11 and provide the best opportunity for a cost effective and timely resolution of the claims described below and the pending litigations in which the Debtors are a party.

5.      Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge of the Debtors' business operations, my review of relevant documents, information provided to me, and/or my opinion based upon my experience, knowledge and information concerning the Debtors' operations and financials.  Unless otherwise indicated, the financial information contained in this Declaration is unaudited and subject to change.

6.      I am authorized to submit this Declaration on behalf of the Debtors, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

2

7.      This Declaration is divided into three parts.  Part I provides an

overview of the Debtors' business and operations, and the circumstances leading to the

commencement of these chapter 11 cases. Part II sets forth the relevant facts in support

of each of the Debtors' First Day Pleadings.  Part III provides the information required

by Local Bankruptcy Rule 1007-2.

## PRELIMINARY STATEMENT

8.      The Debtors are indirect wholly owned subsidiaries of Lehman

Brothers Holdings Inc. ("LBHI").  On December 6, 2011, the Honorable (ret.) James M.

Peck entered an order confirming a chapter 11 plan resolving the Lehman bankruptcy

cases (the "Lehman Plan").  Under the Lehman Plan, LBHI was appointed the Plan

Administrator for the Lehman estates and authorized and directed to wind-down those

estates and distribute available cash to creditors in accordance with the cash waterfalls

set out in the Lehman Plan.  Since the effective date of the Lehman Plan, the Plan

Administrator has resolved nearly $109 billion of disputed claims, distributed nearly

$127 billion of cash, and dissolved thousands of debtor and non-debtor controlled

affiliates.  Just 164 entities remain, 156 non-debtors and 8 entities that are currently

debtors in chapter 11 proceedings.  The primary purpose of this chapter 11 proceeding

is to allow the Debtors to expeditiously resolve outstanding claims against the Debtors,

distribute the remaining cash to their creditors, and ultimately dissolve the Debtors.

9.      Prior to LBHI's bankruptcy, Debtor ACC was a federal savings

bank (formerly known as Aurora Bank FSB ("AB")), which along with its subsidiary,

ALS, engaged primarily in the origination, underwriting, purchase, sale, and servicing

of residential mortgage loans.  By 2012, the Debtors had ceased all mortgage loan

related operations and had sold all of their material assets to unaffiliated entities in a

series of sales.  In mid-2013, ACC, which at that time was AB, relinquished its bank

charter and continued to be dedicated solely to winding down its operations and the
operations of its subsidiary, ALS.

10.     With the assistance of their indirect parent, LBHI, (and the Plan
Administrator), the Debtors have wound down their estates through the consensual
resolution of claims asserted against the Debtors or, when settlement efforts failed, by
litigating those matters to conclusion.

11.     As of February 28, 2019, the Debtors have approximately $74
million in assets consisting of approximately $4.6 million in cash and $69 million in
receivables.

12.     There are currently a number of lawsuits in which the Debtors are
named parties that must be resolved before the Plan Administrator can complete the
wind down and dissolution of the Debtors.  The Debtors have attempted to resolve
these lawsuits expeditiously, but have concluded that continued efforts to resolve them
could take years and require the expenditure of considerable resources.  The Debtors
believe that these chapter 11 cases will facilitate the efficient and timely resolution of the
pending lawsuits.

13.     In addition, the Debtors have been made aware of certain
contingent and unliquidated liabilities, including an intercompany indemnification
claim against the Debtors asserted by LBHI (the "LBHI Claim").  LBHI asserts that the
LBHI Claim arises from mortgages sold by the Debtors to LBHI, and is based on related
liabilities arising from those mortgages subsequently incurred by LBHI.  The Debtors
will independently consider the validity and appropriate size of the LBHI Claim, and
seek to resolve the LBHI Claim during these cases.

14.     Thus, the Debtors have commenced these chapter 11 cases to take
the necessary steps to expedite the efficient resolution of the litigation claims asserted

4

against the Debtors in a forum that will conserve estate resources and maximize

distributable value for their stakeholders.

15.     In contemplation of these chapter 11 cases, Jan (D.J.) Baker was

appointed to serve as an independent director of both Debtors (the "Independent

Director" or "Mr. Baker").  Mr. Baker was previously the Global Co-Chair of the

Corporate Restructuring Practice Group at Latham & Watkins, LLP.  While he practiced

as a restructuring lawyer, Mr. Baker advised management and boards with respect to

core restructuring issues, and with regard to fiduciary duty and corporate governance

questions.  During his legal career, Mr. Baker has represented over 150 private and

public companies.  Among other things, the Independent Director will work with the

Debtors and LBHI to reconcile and resolve the LBHI Claim in accordance with

applicable law.  The Debtors expect to file a chapter 11 plan pursuant to which they will

complete the wind down of their businesses.

I.     **SDNY LBR 1007-2(A)(1) NATURE OF DEBTORS' BUSINESS AND
CIRCUMSTANCES LEADING TO CHAPTER 11 FILING**

A.     **The Chapter 11 Filings**

16.     On the date hereof (the "Petition Date"), both of the Debtors filed

voluntary petitions in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

The Debtors will continue to manage and operate their businesses as debtors in

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Debtors

have requested joint administration of these chapter 11 cases by motion filed

concurrently herewith.  No trustee or examiner has been appointed in these cases.

B. **The Debtors**

i. *Prior to the LBHI Cases*

17.     Debtor ALS was originally incorporated in 1997 with its headquarters in Littleton, Colorado, as a subsidiary of ALS Holdings Inc.  ALS Holdings Inc. was a subsidiary of Lehman Brothers Bank FSB ("LBB"), a federally chartered federal savings bank, which itself was a subsidiary of LBHI.  After ALS Holdings Inc.'s dissolution in 2004, ALS became a direct subsidiary of LBB and has operated as a limited liability company known as Aurora Loan Services LLC since 2005.

18.     From 1997 to 2007, ALS generally serviced mortgage loans that were originated or acquired by its parent company, LBB (aka Debtor ACC).  LBB acquired these loans from a network of brokers and correspondents and sold them to its parent, LBHI.

19.     In early 2008, ALS terminated its correspondent network activities because of declining market conditions, but continued its loan servicing business.

20.     As a consequence of the LBHI Bankruptcy, LBB established a stand-alone operation, and on April 24, 2009, LBB changed its name to AB.  After mid-2011, AB's business was primarily servicing loans.

21.     During 2012, AB's and ALS's portfolios were sold to several unaffiliated entities.  The largest of these transactions was the sale of the residential servicing business, which included both primary and master servicing rights, to Nationstar Morgtage, LLC, on June 12, 2012.[2]

---

[2]   The Debtors' remaining assets were also sold more than six (6) years ago as follows:  On March 30, 2012, Aurora Bank FSB sold certain residential mortgage whole loans and real estate acquired through foreclosure proceedings ("REO") to Selene Finance LP, as purchaser, and Selene Residential Mortgage Opporunity Fund II L.P., as guarantor.  On March 30, 2012, Dawn LLC purchased commerical loans and REO.  On May 3, 2012, Waterfall purchased the Debtors' reverse mortgage loans.  On May 31, 2012, Ocwen Loan Servicing, LLC, purchased commerical mortgage servicing rights, and Roosevelt Mortgage Acquisition Co., and Roosevelt Depositor, LLC purchased certain

6

22.     Following the asset sales, ALS and AB stopped all mortgage activities, and focused on winding down their operations.  On June 5, 2013, AB relinquished its bank charter, and merged into ACC.  Following the merger, ALS became a wholly owned subsidiary of ACC.  A timeline outlining the Debtors' history is attached hereto as <u>Exhibit A</u>.   Both ALS and ACC are currently winding down, and since 2012, neither has been involved in the origination, underwriting, purchase, sale, or servicing of mortgage loans.

23.     Following the asset sales, the Debtors began to wind down their businesses, and incurred significant expenses including, severance payments to former employees, and legal expenses to resolve hundreds of outstanding claims against the Debtors.  During the wind down, the Debtors also entered into various settlements with regulatory agencies, companies, and individuals relating to pre-petition conduct, many of which were confidential.  Additionally, over the past six years, the Debtors have continued to fund their operations, and entered into the LBHI Loan, leaving assets of approximately $74 million, including approximately $4.6 million in cash as of February 28, 2019.

ii.    *Post LBHI Cases*

24.     The Lehman Plan became effective on March 6, 2012 (the "<u>LBHI Effective Date</u>").  Pursuant to section 6.1 of the Lehman Plan, LBHI became the Plan Administrator, authorized to "exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the assets of the [LBHI] Debtors and/or [LBHI] Debtor Controlled Entities under the Plan and in accordance

---

non-performing residential mortgage loans and REO.  On June 28, 2012, New York Community Bank purchased the deposits.  On September 28, 2012, Northeast Bank purchased the SBA Whole Loans, SBA Unguaranteed Interest Loans and HUD/USDA loans.  On October 19, 2012, Newtek Small Business Finance, Inc. purchased the securitized commercial mortgage servicing rights.

with applicable law as necessary to maximize Distributions to holders of Allowed

Claims against the [LBHI Debtors]."

26.   The Debtors have been winding down their operations outside of

bankruptcy court supervision since the sale of their material assets in 2012.

26.   During the wind-down, the Debtors have been involved in

hundreds of lawsuits, most of which relate to the Debtors' origination and servicing of

loans business, and although many of these cases were settled in advance of the Petition

Date, a number are still pending.

**C.   Organizational Structure**

27.   A corporate organization chart is attached hereto as Exhibit B.  As

reflected in that chart, LBHI is the sole stockholder of Lehman Brothers Bancorp, Inc.

("LBBI"), which is the sole stockholder of ACC.  ALS is a wholly owned subsidiary of

ACC.

28.   As discussed below, since October 1, 2013, ACC has operated

pursuant to the Services Agreement (defined below), between ACC and LBHI.

Additionally, ACC funds ALS's operations.

**D.   Services Agreement**

29.   All of the Debtors' back office, corporate, legal, and financial

operations are provided to the Debtors by LBHI pursuant to the Amended and Restated

Intercompany Services Agreement, which was effective as of October 1, 2013, and

amended on November 11, 2014 and amended again on October 1, 2017 (collectively,

the "Services Agreement").  The Services Agreement automatically renews each year

unless a party to the agreement provides 30 days notice of their intent to cancel the

agreement.  The Services Agreement is scheduled to automatically renew on November

11, 2019.

30.    As outlined in the Services Agreement, the services LBHI provides to the Debtors include, legal and claim support, finance and accounts payable functions, human resource services, information technology services, insurance risk management, and executive management support.  The services the Debtors provide to LBHI include, researching claims relating to loans, research relating to active and potential litigations, and special projects that are requested by LBHI from time to time.

31.    The Services Agreement also includes a schedule that sets out the fees for the services provided under the Services Agreement.  The fees under the Services Agreement will decrease as a result of these chapter 11 cases.  Additionally, certain of the remaining activities performed under the Services Agreement have concluded in recent months eliminating certain of the expenses under the Services Agreement.  Accordingly, the Debtors and LBHI are in the process of amending the Services Agreement, and plan to enter into a stipulation and proposed order, which will be presented to the Court, affirming that LBHI will continue to honor and perform under the as amended Services Agreement during these cases.

**E.    LBHI Loan**

32.    On September 30, 2015, ACC and LBHI entered into a promissory note (the "Promissory Note") and collateral agreement (the "LBHI Loan"), pursuant to which ACC agreed to lend $75 million (the "Principal Amount") to LBHI until February 29, 2016 (the "Maturity Date"), which was extended to March 31, 2016.  The Principal Amount of the LBHI Loan was modified to $69 million pursuant to the second amendment, which was executed by ACC and LBHI on April 1, 2016.  ACC and LBHI have executed nine additional amendments to the LBHI Loan, the most recent of which extended the Maturity Date to October 7, 2019.

33.     The applicable interest rate on the LBHI Loan is 1.25% per annum,[3]

payable on demand of ACC, or on the Maturity Date.  The Promissory Note provides

that upon the occurrence and continuance of a default event, the unpaid Principal

Amount shall bear interest at a rate that is 5.0% per annum in excess of the interest rate

that is otherwise payable.

34.     LBHI's obligations under the LBHI Loan are secured by a

continuing security interest in and lien upon nearly all of LBHI's assets.

**F.   Overview of Assets and Liabilities**

35.     As of February 28, 2019, ACC's assets consist of cash and short

term investments in the amount of approximately $4.6 million, and approximately $92

million due from affiliates post-petition, which is related to the LBHI Loan, and the

intercompany receivable due from ALS of approximately $23 million, which was

generated from ACC's funding of ALS's operations.[4]

36.     ACC's liabilities consist primarily of the LBHI Claim, but as of

February 28, 2019, the liabilities on ACC's balance sheet are zero.  The Debtors also have

potential liabilities as described below in Section G.

37.     As of February 28, 2019, ALS's assets consist of approximately

$66,000 in cash, and ALS's liabilities consist of an intercompany payable in the amount

of approximately $23 million due to its affiliate, ACC.

---

[3]   Pursuant to the fifth amendment, which was executed by ACC and LBHI on October 4, 2017, the
applicable interest rate on the LBHI Loan was modified to provide that "interest shall accrue on the
outstanding Principal amount at a rate per annum equal to the rate of interest earned by the Obligor
[LBHI] on the investments of its disputed claim reserves for its disputed claims….[as defined in the
LBHI Plan], determined quarterly on the last day of each calendar quarter plus 0.50% per annum."

[4]   ACC does not expect to collect on the receivable due from ALS, and accordingly, ACC's assets net to
approximately $74 million.

### G.  U.S. Bank Notices

38.     On August 23, 2016, U.S Bank N.A. ("U.S. Bank"), as trustee for
residential mortgage-backed securities ("RMBS"), delivered a total of 286 notices to
several Lehman entities, including LBB and LBHI, regarding potential indemnification
and contribution claims resulting from litigation that U.S. Bank is defending on 138
LBHI issued RMBS deals that were serviced by ALS.  U.S. Bank did not send these
notices to ALS, but in August 2018, U.S. Bank sent similar notices to ALS, regarding
potential indemnification and contribution claims, and stating that U.S. Bank is a party
to 18 actions that could give rise to these potential claims.  During these chapter 11
cases, the Debtors and their professionals will evaluate and analyze these notices and
any potential claims that ultimately arise from them.

## II.     THE DEBTORS' BANKRUPTCY OBJECTIVES

39.     The objective of the Debtors in these chapter 11 cases is to facilitate
the efficient resolution of the claims and pending litigations involving the Debtors so
that these entities can be wound down and dissolved.

40.     In furtherance of this goal, the Debtors will file a bar date motion
substantially contemporaneously herewith.  The Debtors, their Independent Director,
and their professionals intend to evaluate all of the claims that are filed prior to the bar
date, continue to invest in and maximize the value of the Debtors' assets, and pay all or
a portion of allowed claims.  The fundamental dual purposes of chapter 11, to maximize
value, and treat creditors appropriately, will be fulfilled.

## III.    FIRST DAY MOTIONS

41.     Contemporaneously with the filing of this Declaration, the Debtors
filed First Day Motions, and, at the "first day" hearing, will seek orders granting
various forms of relief.

42.     I have reviewed each of the First Day Motions or have otherwise had their contents explained to me, including the exhibits thereto, and I believe that the relief sought in each of the First Day Motions is narrowly tailored to meet the goals described above, and ultimately, will be critical to each Debtor's ability to maximize the value of its assets for its stakeholders.

### A.  <u>Administrative Pleadings</u>

43.     <u>Joint Administration</u>.  The Debtors request entry of an order directing joint administration of their chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  Specifically, the Debtors request that the Bankruptcy Court maintain one file and one docket for each of the chapter 11 cases under the case of ACC.  Further, the Debtors request that an entry be made on the docket of ALS, to indicate the joint administration of the chapter 11 cases.

44.     Given the integrated nature of the Debtors' operations, joint administration of the chapter 11 cases will provide significant administrative convenience without harming the substantive rights of any party in interest.  Many of the motions, hearings, and orders that will be filed in the chapter 11 cases will almost certainly affect both of the Debtors.  The entry of an order directing joint administration of these chapter 11 cases will reduce fees and costs by avoiding duplicative filings and objections and will allow the U.S. Trustee and all parties in interest to monitor the chapter 11 cases with greater ease and efficiency.  I believe that the relief requested in the Joint Administration Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and will enable the Debtors to continue to operate their businesses in Chapter 11 with the greatest efficiency.

45.     Accordingly, on behalf of the Debtors, I respectfully submit that the Joint Administration Motion should be approved.

### B.  Operations Motion

i.   **Debtors' Motion for Interim and Final Orders (I) Authorizing Continued Use of Existing Cash Management Practices, Bank Accounts, and Business Forms; and (II) Authorizing the Continuance of Intercompany Transactions (the "Cash Management Motion").**

46.    Under the Cash Management Motion, the Debtors request the entry of interim and final orders (a) authorizing, but not directing, the Debtors to continue using their existing cash management practices, bank accounts, and business forms; and (b) authorizing the continuance of intercompany transactions.

47.    The Debtors utilize ordinary cash management practices (the "Cash Management Practices") that help control and monitor receipts and disbursements.  The Cash Management Practices and applicable procedures employed by the Debtors constitute customary and essential business practices.  I believe that it would be unduly difficult and expensive for the Debtors to establish new cash management practices.  I believe that allowing the existing Cash Management Practices to remain in place will facilitate a smoother transition into Chapter 11.

48.    I believe that if the Debtors were required to comply with the guidelines of the U.S. Trustee, the burden of opening new bank accounts, revising Cash Management Practices, and immediately ordering new checks and business forms with a "Debtor in Possession" legend would disrupt the Debtors' business operations, and impose burdensome expenses on the estates.

49.    In the ordinary course of business, ACC pays ALS's obligations, which include legal and professional fee payments (the "Intercompany Transactions"). The Intercompany Transactions facilitate the Debtors' day-to-day operations and help preserve the value of the Debtors' primary assets.

13

50.    I believe that the relief requested in the Cash Management Motion is in the best interests of the Debtors' estates creditors, and all other parties in interest, and will make the Debtors' transition into chapter 11 smoother, less costly, and more orderly.  Accordingly, on behalf of the Debtors, I respectfully submit that the Cash Management Motion should be approved.

### C.    Retention-Related Motions

#### i.    Debtors Application to Employ Prime Clerk, LLC as Claims and Noticing Agent (the "Prime Clerk Retention Application")

51.    The Debtors seek to retain Prime Clerk, LLC ("Prime Clerk") as notice, claims, and administrative agent.  I believe that by retaining Prime Clerk in the chapter 11 cases, the Debtors' estate, and particularly its creditors, will benefit from Prime Clerk's service.  Prime Clerk has developed efficient and cost-effective methods in its area of expertise.  I am of the opinion that Prime Clerk is fully equipped to handle the volume of mailing involved and properly sending the required notices to creditors and other interested parties in the chapter 11 cases, and therefore, respectfully submit that the Prime Clerk Retention Application should be approved.

#### ii.    Other Retention Motions

52.    The Debtors will be filing additional motions seeking to, *inter alia*, retain Togut, Segal & Segal LLP, as its bankruptcy counsel.

53.    The Debtors will also be filing a motion to retain professionals in the ordinary course of business whose services are not directly related to the chapter 11 cases, but whose services are required during the chapter 11 cases.

## IV.    ADDITIONAL DISCLOSURES REQUIRED UNDER LOCAL RULE 1007-2

54.    Local Bankruptcy Rule 1007-2 requires that the Debtors provide certain information, which is set forth below.

55. Local Bankruptcy Rule 1007-2(a)(2) is not applicable to the Debtors

chapter 11 cases because they were not originally commenced as a Chapter 7, Chapter

12, or Chapter 13 case.

56. As required under Local Bankruptcy Rule 1007-2(a)(3), Exhibit C

lists the names and addresses of the members of, and attorneys for, any committee

organized prior to the Petition Date and a brief description of the circumstances

surrounding the formation of the committee and the date of its formation.

57. As required under Local Bankruptcy Rule 1007-2(a)(4), Exhibit D

lists the following information with respect to each of the holders of the Debtors' twenty

20 largest unsecured claims on a consolidated basis, excluding claims of insiders: the

creditor's name, address (including the number, street, apartment or suite number, and

zip code, if not included in the post office address), telephone number, the name(s) of

person(s) familiar with the Debtors' accounts, the amount of the claim, and an

indication of whether the claim is contingent, unliquidated, disputed or partially

secured. In each case, the claim amounts listed on Exhibit D are estimated and subject

to verification. In addition, the Debtors reserve their rights to assert remedies, defenses,

counterclaims, and offsets with respect to each claim.

58. As required under Local Bankruptcy Rule 1007-2(a)(5), Exhibit E

lists the holders of the five largest secured claims against each Debtor. As of the

Petition Date, to the best of the Debtors' knowledge and belief, there are no secured

claims against either Debtor.

59. As required under Local Bankruptcy Rule 1007-2(a)(6), Exhibit F

provides a summary of the unaudited assets and liabilities for the Debtors.

60. As required under Local Bankruptcy Rule 1007-2(a)(7), Exhibit G

provides the following information: the number and classes of shares of stock,

debentures, and other securities of the Debtors that are publicly held and the number of
record holders thereof;  and the number and classes of shares of stock, debentures, and
other securities of the Debtors that are held by the Debtors' directors and officers, and
the amounts so held.

61.     As required under Local Bankruptcy Rule 1007-2(a)(8), <u>Exhibit H</u>
provides a list of all of the Debtors' property in the possession or custody of any
custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor, or
agent for any such entity, giving the name, address, and telephone number of each such
entity and the location of the court in which any proceeding relating thereto is pending.

62.     As required under Local Bankruptcy Rule 1007-2(a)(9), <u>Exhibit I</u>
provides a list of the premises owned, leased, or held under other arrangement from
which the Debtors operate their business.

63.     As required under Local Bankruptcy Rule 1007-2(a)(10), <u>Exhibit J</u>
provides the location of the Debtors' substantial assets, and the location of their books
and records.

64.     As required under Local Bankruptcy Rule 1007-2(a)(11), <u>Exhibit K</u>
provides a list of actions against the Debtors.

65.     As required under Local Bankruptcy Rule 1007-2(a)(12), <u>Exhibit L</u>
provides a list of the names of the individuals who comprise the Debtors' existing
senior management, their tenure with the Debtors, and a brief summary of their
relevant responsibilities and experience.

66.     As required under Local Bankruptcy Rule 1007-2(b)(1)-(2),
<u>Exhibit M</u> provides the estimated amount to be paid to the Debtors' employees (not
including officers, directors, and stockholders), the estimated amount, on a consolidated
basis, to be paid to the Debtors' officers, stockholders, directors, and financial and

business consultants retained by the Debtors for the thirty (30) day period following the

Petition Date.

        67.     As required under Local Bankruptcy Rule 1007-2(b)(3), <u>Exhibit N</u>

sets forth, for the thirty (30) day period following the Petition Date, estimated cash

receipts and disbursements, net cash gain or loss, obligations and receivables expected

to accrue but remaining unpaid, other than professional fees, and other information

relevant to the foregoing.

        68.     Copies of the resolutions authorizing the filing of the Debtors'

Chapter 11 petitions are annexed thereto.

*[Concludes on Following Page]*

## V.    **CONCLUSION**

69.    The Debtors plan to file their schedules and a bar date motion substantially contemporaneously with the filing of this Declaration, take steps to reach a settlement with LBHI of all claims between the Debtors and LBHI, propose a plan that provides for a distribution to all remaining creditors, and conclude the orderly wind down of these estates.

I swear under penalty of perjury that the foregoing is true and correct.

Dated:    New York, New York
          March 24, 2019


By:    */s/ Brenda Darnell*
       Name:  Brenda Darnell
       Title:    Senior Vice President

## Exhibit A

## ACC and ALS Timeline

| | 1997 | 2004 | 2008 | 2012 | 2013 | 2019 |
|---|---|---|---|---|---|---|
| **ACC** | LBB | | Aurora Bank | | ACC | |
| | ALS incorporated as a subsidiary of ALS Holdings, Inc., which is a subsidiary of LBB, which itself is a subsidiary of LBHI. | ALS Holdings, Inc. dissolves and ALS becomes a direct subsidiary of LBB. | LBHI commences LBHI Cases on September 15, 2008. LBB establishes stand alone operations and changes its name to Aurora Bank. | Assets of Aurora Bank and ALS sold in a number of unaffiliated transactions. LBHI emerges from bankruptcy on March 6, 2012. | Aurora Bank relinquishes its bank charter, and merges into ACC. | ACC and ALS file for chapter 11 protection on the Petition Date. |
| **ALS** | Subsidiary of ALS Holdings | Subsidiary of LBB | Subsidiary of Aurora Bank | | Subsidiary of ACC | |

## Exhibit B

**Corporate Organization Chart**



## Exhibit C

**Committees**

Pursuant to Local Rule 1007-2(a)(3), to the best of the Debtors' knowledge and belief, no committee has been organized prior to the Petition Date.

## Exhibit D

**Consolidated List of Twenty (20) Largest Unsecured Claims (Excluding Insiders)**

Pursuant to Local Rule 1007-2(b)(4), the following is a list of creditors holding the twenty (20) largest unsecured claims against the Debtors, on a consolidated basis, excluding claims of insiders as defined in 11 U.S.C. § 101.

| Creditor | Contact, Mailing Address, Telephone/Fax Number, Email | Nature of the Claim (e.g. trade debts, bank loans, professional services, and government contracts) | Indicate if claim is Contingent, Unliquidated and Disputed, or disputed, or partially secured | Amount of unsecured claim as of the Petition Date |
|---|---|---|---|---|
| Agha-Khan, M.D., Salma | Agha-Khan, M.D., Salma<br>3751 Motor Ave. #34727<br>Los Angeles, CA 90032<br>Phone: 949-332-0330<br>Fax:<br>Email: salmahagha@aol.com | Litigation | Contingent, Unliquidated and Disputed | $0.00 |
| Brown, Larry | c/o Brian J Jacobs<br>6464 Woodman Avenue, Suite 103<br>Van Nuys, CA 91401<br>Phone: 310-770-6874<br>Fax: 310-858-6489<br>Email: | Litigation | Contingent, Unliquidated and Disputed | $0.00 |
| Heron, James | c/o Talcott Franklin, P.C.<br>Attn: Shannon Conway<br>1920 McKinley Ave, 7th Floor<br>Dallas, TX 75201<br>Phone: (214) 736-8730<br>Fax:<br>Email: sonway@talcottfranklin.com, tal@talcottfranklin.com | Litigation | Contingent, Unliquidated and Disputed | $0.00 |

| Creditor | Contact, Mailing Address, Telephone/Fax Number, Email | Nature of the Claim (e.g. trade debts, bank loans, professional services, and government contracts) | Indicate if claim is Contingent, Unliquidated and Disputed, or disputed, or partially secured | Amount of unsecured claim as of the Petition Date |
|---|---|---|---|---|
| McNichol, Duane E. | c/o Sulaiman Law Group, Ltd. Attn: Alexander Taylor 2500 S. Highland Ave, Suite 200 Lombard, IL 60148 Phone: 630-967-8789 Fax: Email: ataylor@sulaimanlaw.com | Litigation | Contingent, Unliquidated and Disputed | $0.00 |
| Mortgage Electronic Registration Systems, Inc. | c/o Law Offices of Scott J. Oh, LLC Attn: Scott J. Oh 2454 E. Dempster Ste 310 Des Plaines, IL 60016-5319 Phone: (773) 931-6630 Fax: (847) 789-9401 Email: sjo@sjolaw.com | Litigation | Contingent, Unliquidated and Disputed | $0.00 |
| Mutambo, Davies and Susan | c/o Law Offices of Scott J. Oh, LLC Attn: Scott J. Oh 2454 E. Dempster Ste 310 Des Plaines, IL 60016-5319 Phone: (773) 931-6630 Fax: (847) 789-9401 Email: sjo@sjolaw.com | Litigation | Contingent, Unliquidated and Disputed | $0.00 |
| Nationstar Mortgage LLC | Attn: Tony Villani, General Counsel 8950 Cypress Waters Blvd. Coppell, TX 75019 Phone: (972) 428-1600 Fax: (956) 428-1601 Email: | Indemnification | Contingent, Unliquidated and Disputed | $0.00 |

| Creditor | Contact, Mailing Address, Telephone/Fax Number, Email | Nature of the Claim (e.g. trade debts, bank loans, professional services, and government contracts) | Indicate if claim is Contingent, Unliquidated and Disputed, or disputed, or partially secured | Amount of unsecured claim as of the Petition Date |
|---|---|---|---|---|
| Redmond, James | c/o Justin M. Block, Esq<br>One Suffolk Square, Suite 500<br>1601 Veterans Memorial Highway<br>Islandia, NY 11749<br>Phone: (631) 543-2200<br>Fax:<br>Email: | Litigation | Contingent, Unliquidated and Disputed | $0.00 |
| U.S. Bank, N.A. | c/o Fein, Such & Crane, LLP<br>1400 Old Country Road, Suite C103<br>Westbury, NY 11590<br>Phone: (310) 770-6874<br>Fax: (310) 858-6489<br>Email: | Litigation | Contingent, Unliquidated and Disputed | $0.00 |

### Exhibit E

**Holders of Five (5) Largest Secured Claims
Against the Debtors on a Consolidated Basis**

Pursuant to Local Bankruptcy Rule 1007-2(a)(5), to the best of the Debtors' knowledge and belief, there are no liquidated secured claims against the Debtors.

<u>Exhibit F</u>

**Summary of the Debtors' Assets and Liabilities**

The amounts reflected below were derived by totaling the indicated amounts reflected in each Debtor's books and records. The following financial data shall not constitute an admission of liability by the Debtors. The Debtors reserve all rights to assert that any debt or claim included herein is a disputed claim or debt or challenge the priority, nature, amount or status of any claim or debt.

**Aurora Commercial Corp.**
**Statement of Financial Condition (Unaudited)**
**February 28, 2019**
*($ in thousands)*

| | | |
|---|---|---:|
| **Assets** | | |
| Cash and short-term investments | $ | 4,676 |
| Cash and short-term investments pledged and restricted | | - |
| | | |
| Receivables and other assets | | - |
| Due from affiliates - Post Petition | | 92,015 |
| **Secured Receivables from Controlled Affiliates and other assets** | | **92,015** |
| | | |
| **Investment in Affiliates:** | | |
| Controlled Entities - Aurora Loan Services LLC | | (22,958) |
| **Total Investments in Affiliates** | | **(22,958)** |
| | | |
| **Total Assets** | **$** | **73,733** |
| | | |
| | | |
| **Liabilities and Stockholders' Equity** | | |
| **Liabilities** | | |
| Due to affiliates - Post Petition | | 0 |
| Taxes and Other Payables | | - |
| **Total Liabilities** | | **0** |
| | | |
| **Stockholders' equity** | | |
| Common stock and additional paid-in capital | | 1,496,018 |
| Retained earnings and other stockholders' equity | | (1,422,284) |
| **Total stockholders' equity** | | **73,733** |
| | | |
| **Total liabilities and stockholders' equity** | | **73,733** |

1.  This unaudited Statement of Financial Condition as of December 31, 2017, should be read in conjunction with the Notes to the Balance Sheets, filed by Lehman Brothers Holdings Inc. ("LBHI") with the Bankruptcy Court. Copies are available at www.lehman-docket.com.  On March 6, 2012 the Debtors announced the occurrence of the Effective Date of their Plan and emergence from Chapter 11.

2.  Aurora Commerical Corp. ("ACC") is a wholly owned subsidiary of Lehman Brothers Bancorp Inc.

3.  Adjustments may be required in future Statements of Financial Condition (including write-downs and write-offs) as amounts ultimately realized may vary materially from the amount reflected on the Statement of Financial Condition due to significant costs to wind down and other potential liabilities.

4.  ACC is involved in a number of judicial, regulatory and mediation proceedings and various other matters.  ACC is unable at this time to determine the financial impact of such proceedings and the impact that any potential recoveries or liabilities may have upon the Statement of Financial Condition.   As more information becomes available, ACC may record revisions, which may be material, in future Statements of Financial Condition.

5.  The information contained in this statement is proprietary to ACC and should be treated as confidential information.

**Aurora Loan Services LLC**
**Statement of Financial Condition (Unaudited)**
**February 28, 2019**
*($ in thousands)*

| | | |
|---|---:|---:|
| **Assets** | | |
| Cash and short-term investments | $ | 66 |
| Cash and short-term investments pledged and restricted | | - |
| | | |
| Receivables and other assets | | - |
| Due from affiliates - Post Petition | | - |
| **Secured Receivables from Controlled Affiliates and other assets** | | - |
| | | |
| **Total Assets** | **$** | **66** |
| | | |
| **Liabilities and Stockholders' Equity** | | |
| **Liabilities** | | |
| Due to affiliates - Post Petition | $ | 23,015 |
| Taxes and Other Payables | | |
| **Total Liabilities** | **$** | **23,015** |
| | | |
| **Stockholders' equity** | | |
| Common stock and additional paid-in capital | $ | 210,070 |
| Retained earnings and other stockholders' equity | $ | (233,019) |
| **Total stockholders' equity** | **$** | **(22,949)** |
| | | |
| **Total liabilities and stockholders' equity** | **$** | **66** |

1.  This unaudited Statement of Financial Condition as of December 31, 2017, should be read in conjunction with the Notes to the Balance Sheets, filed by Lehman Brothers Holdings Inc. ("LBHI") with the Bankruptcy Court. Copies are available at www.lehman-docket.com.  On March 6, 2012 the Debtors announced the occurrence of the Effective Date of their Plan and emergence from Chapter 11.

2.  Aurora Loan Services LLC ("ALS") is a wholly owned subsidiary of Aurora Commercial Corp.

3.  Adjustments may be required in future Statements of Financial Condition (including write-downs and write-offs) as amounts ultimately realized may vary materially from the amount reflected on the Statement of Financial Condition due to significant costs to wind down and other potential liabilities.

4.  ALS is involved in a number of judicial, regulatory and mediation proceedings and various other matters.  ALS is unable at this time to determine the financial impact of such proceedings and the impact that any potential recoveries or liabilities may have upon the Statement of Financial Condition.   As more information becomes available, ALS may record revisions, which may be material, in future Statements of Financial Condition.

5.  The information contained in this statement is proprietary to ALS and should be treated as confidential information.

## Exhibit G

### The Debtors' Securities

Pursuant to Local Rule 1007-2(a)(7), the Debtors do not have any publicly traded stock, debentures, or securities.

## <u>Exhibit H</u>

**Debtors' Property Not in the Debtors' Possession**

   Pursuant to Local Bankruptcy Rule 1007-2(a)(8), to the best of the Debtors' knowledge and belief, none of the Debtors' property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor, or agent for such entity.

## Exhibit I

**Debtors' Premises**

Pursuant to Local Bankruptcy Rule 1007-2(a)(9), the following lists the premises owned, leased, or held under other arrangement from which the Debtors operate their businesses as of the Petition Date:

| Debtor/Lessee | Address | Type of Interest |
|---|---|---|
| Aurora Commercial Corp. | 277 Park Avenue<br>46th Floor<br>New York, NY 10172 | Debtors are in use and possession of certain office space pursuant to the Services Agreement. |

## Exhibit I

### Location of Debtors' Substantial Assets and Books and Records,
### and Nature and Location of Debtors' Assets Outside the United States

        Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the following lists the location of the Debtors' substantial assets, the location of their books and records, and the nature, location and value of any assets held by the Debtors outside the territorial limits of the United States.

| Debtors' Assets | Location |
| --- | --- |
| **Debtors' Substantial Assets** | The Debtors' substantial assets are located in New York and Minnesota. |
| **Debtors' Assets Outside the United States** | Not applicable. |

### Debtors' Books and Records

277 Park Avenue, 46th Floor
New York, NY 10172

501 W. George Bush Pkwy, Suite 300
Richardson, TX 75080

18200 Von Karman Suite 250
Irvine, CA 92612

400 Professional Place Dr., Suite 100
Gaithersburg, MD 20879

3040 Route 22 West
Branchburg, NJ 08876

3344 Moline Dr.
Aurora, CO 80010

11333 E. 53rd Ave.
Denver, CO 80239

15505 East Hinsdale Circle
Englewood, CO 80112

8879 Fox Dr.
Thornton, CO 80260

## Exhibit K

### List of Actions Against the Debtors[1]

Pursuant to Local Bankruptcy Rule 1007-2(a)(11), the following lists the nature and present status of each action or proceeding, pending or threatened, against the debtor or its property where a judgment against the debtor or a seizure of its property may be imminent.

| Case Title | Case Number | Debtor(s) | Nature of the Case | Court or Agency's Name and Address | Status of Case |
|---|---|---|---|---|---|
| *Brown v. Aurora Bank FSB, et al.* | 15CECG01171 | ACC | Wrongful Foreclosure | Superior Court of California, County of Fresno<br><br>1130 O Street<br>Fresno CA 93724-0002 | Pending |
| *Brown v. Aurora Bank FSB, et al.* | 16CEG02223 | ACC | Wrongful Foreclosure | Superior Court of California, County of Fresno<br><br>1130 O Street<br>Fresno, CA 93724-0002 | Pending |
| *United States of America ex rel. James Heron v. Aurora Loan Services LLC, Aurora Commercial Corp, Aurora Bank FSB et al.* | 1:17-cv-03084-PAB-STV | ACC; ALS | Alleged False Claims Act violations | D. Colo.<br><br>Alfred A. Arraj Courthouse<br>901 19th Street<br>Denver, CO 80294 | Pending |

[1] This list of actions against the Debtors does not include actions that Nationstar Mortgage LLC is responsible for managing pursuant to the Asset Purchase Agreement dated June 12, 2012.

| Case Title | Case Number | Debtor(s) | Nature of the Case | Court or Agency's Name and Address | Status of Case |
|---|---|---|---|---|---|
| *McNichol v. Aurora Bank, FSB et al.* | 1:18-CV-08351 | ACC | Alleged violations of the Fair Credit Reporting Act | N.D Ill.<br><br>Everett McKinley Dirksen United States Courthouse 219 South Dearborn Street Chicago, IL 60604 | Pending |
| *U.S. Bank, N.A. v. Rutigliano et al.* | 01148/2008 | ACC | Foreclosure rescue scheme | County of Suffolk, Supreme Court of the State of New York<br><br>1 Court Street Riverhead, NY 11901 | Pending |
| *Agha-Khan v. Pacific Community Mortgage, Inc., et al.* | 18-15202 | ALS | Contested Foreclosure | 9th Cir.<br><br>James R. Browning United States Courthouse 95 Seventh Street San Francisco, CA 94103 | On appeal |
| *Mortgage Electronic Registration Systems, Inc., v. Mutambo, et al.* | 2004-CH-1158 | ALS | Contested Foreclosure | 18th Judicial Circuit Court<br><br>505 N. County Farm Road Wheaton, Illinois 60187 | Pending |

2

## Exhibit L

### Senior Management of the Debtors

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following lists the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience.

### *Kristine Dickson, President and Director*

Kristine Dickson is currently the Chief Financial Officer ("CFO") of Lehman Brothers Holdings Inc. ("LBHI"), a role she has held since January 2016. She is the current President of Aurora Commercial Corp. ("ACC") and Aurora Loan Services LLC ("ALS" and together with ACC, "Aurora"), and has served on both Aurora boards since early 2016. Ms. Dickson's responsibilities include management of finance, accounting and external reporting; treasury and cash management; tax compliance; insurance risk management; human resources; creditor relations; information-technology; facilities; as well as the operational wind down of the Lehman estate. Ms. Dickson joined LBHI in 2012 as Chief Administrative Officer.

Prior to Lehman, Ms. Dickson held various finance and operations roles at Willis Group Holdings (n/k/a Willis Towers Watson). From 2009-2012, Ms. Dickson was the Regional Financial and Operating Officer for the Northeast Region, with over $250 million of revenue and 750 personnel, including the company's flagship operations in New York City. From 2006-2008, Ms. Dickson led Financial Planning & Analysis for Willis North America and ultimately for Willis globally (based in London and Ipswich, UK). From 2001-2006, Ms. Dickson worked on the Global Mergers & Acquisitions Team, which focused on targeted acquisitions and operational integrations, as well as non-core asset dispositions, in North America and Europe. Prior to Willis, Ms. Dickson worked in Investment Banking at Salomon Smith Barney.

Ms. Dickson holds a B.S.E. in Computer Systems Engineering from Stanford University.

### *Clifford Feibus, Secretary*

Clifford Feibus, with over 30 years of public auditing and private accounting experience, is the global controller for LBHI. In this role, he has primary responsibility for the external financial reporting and budgeting functions. His group has also performed in such areas as litigation support, systems migration, developing the cost allocations model and implementing and maintaining cash controls.

He joined Lehman Brothers in 2001 and his roles before bankruptcy included CFO of Operations and Corporate Services, head of the balance sheet and consolidation functions and CFO of the Private Investment Management Division which was the distribution network to middle market institutions and high net worth individuals.

Prior to joining Lehman, Mr. Feibus spent over 10 years as a senior audit

manager at Ernst & Young working on such clients as PaineWebber, and Morgan Stanley and Warburg Pincus private equity divisions.  Mr. Feibus was the CFO for over 9 years at a hedge fund and private equity fund.

### Brenda Darnell, Senior Vice President

Brenda Darnell holds an M.B.A. from the University of Wyoming and began her career with ALS in May 1998.  From 1998-2008, Ms. Darnell's responsibilities at various times included management of Escrow Administration, Customer Service, Default Management, Special Projects, Operational Controls and Reporting & Analysis.  She was instrumental in driving process improvements and implementing control enhancements throughout servicing, a highlight of which was creating SPEED ACH, the Company's proprietary program for electronic payment collections, which improved loan counselor efficiency and increased Servicing's ancillary income.

While away from the companies from mid 2008 to late 2011, Ms. Darnell served as an Area Director for the US Department of Agriculture, directing outreach efforts, origination and servicing activities for loan guarantees, direct loans and grants, delivering over $200 million in loan guarantees, direct loans and grants for lenders, businesses, non-profits, municipalities, cooperatives and individuals, while also managing a commercial servicing portfolio in excess of $150 million for 23 counties in Western Nebraska.

Ms. Darnell returned to Aurora in late 2011 to spearhead projects related to the GSEs where she designed workflow to manage claims and GSE compensatory fees.  She led a team that assessed, negotiated and resolved claims/litigation with business counterparties and government agencies in excess of $110 million, and concluded relationships with business partners and government entities for residential and commercial loan servicing to facilitate closure of the companies.  She also served as a corporate witness for depositions and trial, providing testimony on behalf of the company on several topics ranging from individual loan history to company practice.

Prior to joining Aurora, Ms. Darnell worked as an auto finance business manager and cash management specialist for a commercial bank.

### William Olshan, Senior Vice President

William Olshan is the General Counsel of LBHI.  Mr. Olshan's responsibilities include management of all legal issues affecting LBHI, the chapter 11 debtors and controlled affiliates, including ACC and ALS.  Mr. Olshan has been employed by Lehman since 1990.  He began his legal career in 1986 as an associate at Cadwalader, Wickersham & Taft LLP and then joined Willkie Farr & Gallagher LLP as an associate in 1988.  He obtained a Bachelor of Arts, *magna cum laude,* from the Boston University College of Liberal Arts in 1983 and a J.D. from the Boston University Law School in 1986.

### *Jeffry Ciongoli, Vice President and Co-Treasurer*

Jeffry J. Ciongoli is the Managing Director-Head of Global Tax for LBHI.  In his role as Chief Tax Officer, Mr. Ciongoli is responsible for all aspects of global tax, including Board of Director/Chief Executive Officer presentations, strategy, compliance, tax controversy for Domestic and International (litigation and audit defense), business unit support, budgets, accounting, planning, compensation/benefits, technology and administration.  Mr. Ciongoli managed a staff of 40+ tax professionals, including attorneys and accountants, and is responsible for management/budget appropriation of all service provider engagements and projects.   Mr. Ciongoli is also the lead LBHI Tax liaison/negotiator with the DOJ and IRS/Chief Counsel/Appeals divisions.  In this capacity, Mr. Ciongoli was responsible for engineering and implementing strategies that ultimately resulted in the reduction of billions in assessments, claims and exposure globally for numerous structured FTC, yield enhancement and corporate transactions.

Prior to the Lehman Brothers bankruptcy, Mr. Ciongoli served as Global Head of the Investment Management Division of the Tax Department ("IMD Tax"), with a collective staff of 35 US tax professionals worldwide.  Concurrently, he was responsible for every aspect of the Federal Consolidated Tax Return and the Firm's State and Local Taxes, including all planning and compliance.  As Head of Tax Controversy Mr. Ciongoli was responsible for both Federal and State and Local litigation and audit defense matters.  As the Global Head of IMD Tax, Mr. Ciongoli supervised all tax related structuring, compliance, planning and administration for the Division that included Private Equity, Asset Management and the Neuberger Berman Division.  Mr. Ciongoli was a member of the Global Tax Management Committee, which was responsible for setting goals and development of the tax strategy for the Firm.

During his 35 year tenure at Lehman Brothers, Mr. Ciongoli held numerous Tax Executive roles within the Corporate Tax Department, including Global Head of Tax Technology, CAO of Global Tax, VP-Federal, International and State Taxes and, VP-Compensation and Benefits Taxes.

Mr. Ciongoli began his career at Unilever-Lipton Tea Division, as a staff accountant in their Finance Accounting Management Program.  The Program provided training in all of the key functions within the Finance Division, including Treasury, Tax, Financial Planning and Analysis, Internal Audit and Staff Accounting.

Mr. Ciongoli received his Bachelor of Business Administration degree in Accounting from the Lubin School of Business at Pace University and holds a Master of Science in Taxation from the Lubin School of Business at Pace University.

### *Claire Leonard, Vice President and Assistant Secretary*

Claire Leonard holds an undergraduate degree from Georgetown University and a J.D. from the Villanova University School of Law.  Ms. Leonard has been employed by LBHI since November 2009 and has various responsibilities, including acting as an assistant secretary of various LBHI subsidiary entities, including ACC and ALS.

3

### Linda Klang, Vice President and Assistant Treasurer

Linda A. Klang is a Senior Vice President-Taxes with LBHI in New York.  Her responsibilities include all aspects of state and local tax matters including audits, compliance and tax accounting as well as planning and policy considerations.  Since joining Lehman Brothers Holdings in 2007, her broad range of experience includes a petition for certiorari to the United States Supreme Court, audit issues in non-US tax jurisdictions, various Federal and State partnership matters, bankruptcy claims and entity simplification.  Prior to joining Lehman Brothers, Ms. Klang was an Executive Director with Time Warner Inc. for nineteen years.  Prior to her experience with Time Warner, Ms. Klang worked for Coopers & Lybrand in the New York Office as a member of the State and Local Tax Group.

Ms. Klang holds of Bachelor of Arts from Marymount Manhattan College and a J.D. from New York Law School.  She studied Accounting and Finance at Pace University.

Ms. Klang is admitted to the New York State bar and is a member of the New York State Bar Association and the American Bar Association.  She is currently a Director of the New York Chapter of the Tax Executives Institute ("TEI") and Chair of the State and Local Tax Committee.  She has served as Chapter President twice and was the TEI Region II Vice-President for 2014-2015.

Linda has been a speaker for the Georgetown Advanced State and Local Tax Institute, Practicing Law Institute's Tax Planning for Domestic & Foreign Partnerships, LLCs & Other Strategic Alliances, Tax Executives Institute-New York Chapter, COST (Council on State Taxation) and the Institute for Professionals in Taxation ("IPT") (Income Tax Symposium, Basic Income Tax School and Advanced Income Tax School).  She was named the 2009 Income Tax Instructor of the Year for IPT.

### D.J. (Jan) Baker, Director

D.J. (Jan) Baker joined Aurora as an Independent Director in March of 2019.  Mr. Baker spent his legal career practicing in all phases of both out-of-court recapitalizations and restructurings as well as in-court-reorganization proceedings.  In 2017, he retired from Latham & Watkins LLP, where he had been Global Co-Chair of the Corporate Restructuring Practice Group.

As a restructuring lawyer, Mr. Baker not only advised managements and boards with respect to core restructuring issues, but also with regard to fiduciary duty and corporate governance questions.  He has represented more than 150 different public and private companies.

During his legal career, Mr. Baker was regularly recognized by both legal guides and clients as one of the most accomplished restructuring lawyers in the country.  The Legal 500 US Guide described him as providing "untiring counsel and expertise" and as being "particularly effective in sharing his invaluable judgment and providing a calm hand."  Named by Chambers USA as a "key individual" among all U.S. restructuring lawyers, he was praised for his constructive and pragmatic approach.  He is a Fellow of the American College of Bankruptcy and served as its President and then as the Chair

4

of its Board of Directors.  In 2014, UJA-Federation presented him with the Professor
Lawrence P. King Award, and in 2016, Catholic Renewal selected him as the recipient of
the St. Francis Service Award.

Since retiring from Latham, Mr. Baker has concentrated on board-related work.
He currently serves as a director of Cumulus Media, Inc.;  a member of the Board of
Managers of Enduro Resource Holdings LLC;  a director of Toisa Limited;  a director of
Toshiba Nuclear Energy Holdings (UK) Limited;  a member of the Advisory Council of
the Hastings Center, a bio-ethics institute;  a member of the Executive Committee of the
Bankruptcy and Reorganization Group of UJA-Federation;  and a member of the
Conservation Board of Philipstown, NY.

He holds an undergraduate degree from Harvard University and a J.D. from the
University of Houston Law Center, *magna cum laude*, and he served as Editor in Chief of
the Houston Law Review.

### Anton Kolev, Co-Treasurer

Anton Kolev is currently the Treasurer for the post-bankruptcy Lehman Estates.
Mr. Kolev is responsible for day-to-day treasury operations and cash flow / liquidity
management of the Estate.  He overseas in-house trading activities and a third party
managed investment portfolio and manages the foreign currency-hedging program. Mr.
Kolev leads and manages the semi-annual distributions to unsecured creditors in
accordance with the Lehman Plan.  Some of his other responsibilities include
supervising the accounts payable and payroll functions, negotiating third party and
intercompany financing agreements and manage banking relationships and various
special projects.  Mr. Kolev joined LBHI in 2012.

Prior to LBHI, Mr. Kolev spent more than seven years in management consulting
providing turnaround and restructuring advisory services to distressed and
underperforming companies.  He most recently worked for AlixPartners where he
advised clients on financial and operational turnarounds and assumed various interim
management roles in treasury, FP&A and accounting.  Prior to that, he was with KPMG
where he managed audit and transaction advisory engagement both in U.S. and
Europe.

Mr. Kolev holds a B.A. in Business Administration from American University in
Bulgaria and a M.B.A. from New York University Stern School of Business.

## Exhibit M

**Payroll**

      Pursuant to Local Bankruptcy Rule 1007-2((b)(1)-(2)(A) and (C), the following provides the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors and stockholders) and the estimated amount to be paid to officers, directors, stockholders and financial and business consultants retained by the Debtors for the 30-day period following the Petition Date).

*(in thousands)*

| | |
|---|---:|
| **Payments to Employees** | $0 |
| **Payments to Officers, Directors and Stockholders** | $25 |
| **Payments to Financial and Business Consultants** | $240 |

### Exhibit N

#### Cash Receipts and Disbursements, Net Cash
#### Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Rule 1007-2(b)(3), the following provides, for the 30-day period following the commencement of these chapter 11 cases, the Debtors' estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

*(in thousands)*

| Aurora Commercial Corp. | |
|---|---:|
| Cash Receipts | $0 |
| Cash Disbursements | $385 |
| Net Cash Gain | $0 |
| Unpaid Obligations | $0 |
| Unpaid Receivables | $23,015 |

| Aurora Loan Services LLC | |
|---|---:|
| Cash Receipts | $0 |
| Cash Disbursements | $0 |
| Net Cash Gain | $0 |
| Unpaid Obligations | $23,015 |
| Unpaid Receivables | $0 |