FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                          : Chapter 11
                                                                :
AURORA COMMERCIAL CORP., *et al.*,        : Case No. 19-10843 (SCC)
                                                                :
              Debtors.                                    : (Jointly Administered)
-----------------------------------------------------------X

## MEMORANDUM OPINION AND ORDER SUSTAINING DEBTORS' OBJECTION TO CLAIM NOS. 20 AND 29 FILED BY TIA DANIELLE SMITH

**A P P E A R A N C E S:**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
    Albert Togut, Esq.
    Frank A. Oswald, Esq.
    Kyle J. Ortiz, Esq.
        Of Counsel
*Attorneys for Debtors and Debtors in Possession*

TIA DANIELLE SMITH
*Pro Se*

**SHELLEY C. CHAPMAN**
**United States Bankruptcy Judge**

      Before the Court is the *Debtors' Objection to Claim Nos. 20 and 29 filed by Tia Danielle Smith*, dated July 31, 2019 ("Objection") [Dkt. No. 106]. Ms. Smith filed a response opposing the Objection, *Response to Debtors' Objection to Proof of Claim Nos. 20 and 29 Filed by Tia Danielle Smith*, dated September 26, 2019 ("Response") [Dkt. No. 160], and a supporting declaration, *Declaration of Tia Danielle Smith in Support of Response to Debtors' Objection to Proof of Claim Nos. 20 and 29 Filed by Tia Danielle Smith*, dated September 26, 2019 ("Smith

Decl.") [Dkt. No. 161];[1] and the Debtors filed a reply, *Debtors' Reply to Claimant Tia Danielle Smith's Response to Debtors' Objection to Proof of Claim Nos. 20 and 29 filed by Tia Danielle Smith*, dated October 15, 2019 ("Reply") [Dkt. No. 208].[2]

The Debtors are seeking an order disallowing Claim Nos. 20 and 29 (the "Claims") filed by Tia Danielle Smith against Debtors Aurora Commercial Corp. ("ACC") and Aurora Loan Services LLC ("ALS") on the basis of res judicata and the expiration of applicable statutes of limitations. For the reasons that follow, the Debtors' Objection is sustained, and the Claims are disallowed and expunged.

## BACKGROUND

This dispute has a long history. The details of this history are set forth in decisions issued by numerous courts, including (a) the decisions of the California Court of Appeal in *Smith v. American Mortgage Network, et al.*, No. B252585, 2015 WL 2438819 (Cal. Ct. App. May 21, 2015) ("*Smith I*"); *Smith v. American Mortgage Network, et al.*, No. B271362, 2018 WL 4075908 (Cal. Ct. App. Aug. 27, 2018) ("*Smith I.A*"); and *Smith v. IH4 Property West, LP, et al.*, Nos. B271813, B278477, B279562, 2019 WL 1417157 (Cal. Ct. App. Mar. 29, 2019) ("*Smith II*"); (b) the decision of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit in *Smith v. IH4 Property West LP (In re Smith)*, BAP No. CC-16-1414-FLKu, 2018 WL 669120 (B.A.P. 9th Cir. Feb. 1, 2018) ("*Smith v. IH4*"); and (c) two decisions of this Court in *In re Residential Capital,*

---

[1]   Ms. Smith also filed an unauthorized sur-reply, *Tia Danielle Smith's Supplemental Reply in Support of Response to Debtors' Objection to Proof of Claim Nos. 20 and 29 filed by Tia Danielle Smith*, dated October 21, 2019 [Dkt. No. 218], which essentially repeats the arguments raised in her Response.

[2]   The Debtors also filed the *Declaration of Brenda Darnell in Support of the Debtors' Objection to Claim Nos. 20 and 29 Filed by Tia Danielle Smith*, dated July 31, 2019 ("Darnell Decl.") [Dkt. No. 106-2]. The Debtors did not seek to have this declaration moved into evidence but asserted that many of the documents attached to the declaration are public records of which the Court may take judicial notice. The Court agrees.

*LLC*, 518 B.R. 720 (Bankr. S.D.N.Y. 2014) (MG) ("*ResCap I*") and *In re Residential Capital, LLC*, Case No. 12-12020 (MG), 2016 WL 3240256 (Bankr. S.D.N.Y. June 3, 2016) (MG) ("*ResCap II*"). Suffice to say, substantial judicial resources have been devoted to Ms. Smith's claims over the past five years.

**A.    *Ms. Smith's Mortgage***

In 2006, Ms. Smith refinanced the mortgage on her home, located at 4011 Hubert Avenue, Los Angeles, CA 90008 (the "Property") by borrowing $556,000 from American Mortgage Network, Inc. ("AMN"). (*Smith I*, p. 2.) Ms. Smith executed a promissory note ("Note") and a deed of trust ("Deed of Trust") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for AMN. (Darnell Decl., Ex. A to Ex. A, at ECF p. 109 of 388 & Ex. B to Ex. A, at ECF p. 124 of 388.) Debtor ALS became the mortgage servicer soon after the loan was originated. (*Smith I.A*, p.2.)

Ms. Smith defaulted on the Note in January 2008. (*ResCap II*, at *2.) After entering into a string of workout agreements, Smith sought a loan modification, which was denied in July 2009. (*Smith I*, p. 4.) Further workout agreements were offered to Ms. Smith; she rejected them all. (*Id*.) In September 2009, non-judicial foreclosure proceedings were commenced by a substitute trustee under the Deed of Trust. (*Id*.) On October 1, 2009, MERS executed a corporate assignment of deed of trust, assigning the Deed of Trust to ALS. (*Id*., pp. 4-5.) A forbearance agreement and yet another workout agreement were reached in 2010. (*Id*., p. 5.) Ms. Smith again sought a loan modification, which was denied. (*Id*.) A notice of trustee sale was recorded in May 2011. (*Id*.) The Property was eventually sold at a trustee's sale on November 16, 2011, and a deed upon sale ("Deed upon Sale") was issued to ALS. (*Id*.; *Smith v. IH4*, at *1; Darnell Decl. Ex. K to Ex. A, at ECF p. 187 of 388.)

3

B.     *Ms. Smith's California Litigations*

Ms. Smith filed her first lawsuit against ALS and other parties in the Superior Court of Los Angeles County on July 15, 2011 seeking to prevent foreclosure of the Property. (*Smith I*, p. 5.) In her third amended complaint in that action, Ms. Smith asserted seventeen causes of action based on her central thesis that the defendants had "no legal, equitable, or pecuniary interest in [her] promissory note and deed of trust." (*Id.*) She argued, among other things, that (a) the Note was not properly endorsed to ALS; (b) ALS lacked standing to foreclose; (c) the foreclosure was wrongful; (d) the Deed upon Sale should be invalidated; and (e) the person who executed the assignment of the Deed of Trust from MERS to ALS did not have proper authority. (*Id.*, pp. 5, 8-10.) ALS responded to the complaint by filing a demurrer, which was granted by the trial court on August 16, 2013, without leave to amend. (*ResCap I*, 518 B.R. at 727.) A motion to set aside the judgment was denied. (*Smith I*, p. 6.) Ms. Smith appealed.

In *Smith I*, the California Court of Appeal affirmed the judgment of the lower court and noted that Ms. Smith *admitted* that she defaulted on her Note and rejected her argument that there had been a wrongful foreclosure. The court also concluded that she lacked standing to bring claims that her Deed of Trust was improperly securitized or that assignments to ALS or others were invalid. (*Id.*, pp. 7, 9, 12.) In addition, the court rejected her claims for fraud and other derivative claims (breach of the note, unfair debt collection practices, unfair credit reporting practices, violation of the Truth in Lending Act, unfair competition, unjust enrichment, declaratory relief, cancellation of instruments, quiet title, an accounting, and constructive trust), concluding that these were merely new "names" given by Ms. Smith to her central claim — that the defendants had no interest in her Note and Deed of Trust. (*Id.*, pp. 14-17.) The United States

4

Supreme Court denied Ms. Smith's petition for certiorari. *Smith v. Am. Mortg. Network*, 136 S. Ct. 810 (2016).

On remand to the California trial court, Ms. Smith again moved to set aside the judgment, this time because the name of the trust that held her Note was at times mis-spelled in pleadings as "RALI 2007-Q01" instead of "RALI 2007-QO1" — *i.e.*, that the penultimate character, an upper case "O," was sometimes miswritten as a "zero." (*Smith I.A*, p. 2.) Her motion was denied, and the decision affirmed by the California Court of Appeal on August 27, 2018. (*Id.*, pp. 2, 8 (granting costs to the respondents on appeal).)

While *Smith I* was still making its way through the California courts, Ms. Smith filed a second lawsuit against ALS and others on August 4, 2014 in the Superior Court of Los Angeles County. (*Smith II*, p. 6.) In *Smith II*, Ms. Smith's complaint contained ten causes of action, all challenging ALS's conveyance of its interests in the Note and Deed of Trust to Nationstar, and Nationstar's subsequent conveyance to IH4 Property West, LP ("IH4"). (*Id.*) The defendants filed a demurrer, asserting that the action could not proceed since defendant ALS was still a party in the pending *Smith I* action. (*Id.*, p. 6-7.) In response, Ms. Smith filed an amended complaint, voluntarily dismissing ALS from *Smith II*. (*Id.*, pp. 6-7.) The court then stayed the proceedings in *Smith II* pending the resolution of *Smith I*. (*Id.*, p. 7.)

On the same day that Ms. Smith commenced *Smith II*, the then current owner of the Property, IH4, filed a complaint for unlawful detainer against tenants of Ms. Smith who were occupying the Property. (*Id.*) Ms. Smith filed a claim of right to possession in the unlawful detainer action. (*Id.*) A jury verdict was returned on November 17, 2014, finding that IH4 was entitled to possession of the Property. (*Id.*) A judgment in favor of IH4 was entered in the

5

unlawful detainer action,[3] which was affirmed by the Appellate Division of the California Superior Court on May 6, 2016. (*Id.*, p. 7 & n. 4.) A request to transfer to another division of the California Court of Appeal and a petition for writ of mandate to the California Supreme Court were both denied. (*Id.*, p.7, n. 4.)

After the Court of Appeal entered its decision in *Smith I*, the lower court lifted the stay in *Smith II*. The remaining defendants filed demurrers arguing that the complaint should be dismissed under the doctrines of res judicata and collateral estoppel, which demurrers were sustained without leave to amend. (*Id.*, pp. 9-11.) The California Court of Appeal affirmed this decision in its opinion issued on March 29, 2019. (*Id.*, pp. 34.) The Court of Appeal concluded that most of Ms. Smith's claims were barred by res judicata. (*Id.*, pp. 20-21.) The claims asserted in *Smith II* were based on the same primary right asserted by Ms. Smith in *Smith I*, namely her "right to be free from an unlawful foreclosure." (*Id.*, p. 19.) The Court of Appeal concluded that the judgment in *Smith I* was a final decision on the merits based on the same primary right as the claims asserted in *Smith II*, and therefore nearly all of the claims asserted in *Smith II* were precluded. (*Id.*, pp. 18-25.) The Court of Appeal upheld the dismissal of Ms. Smith's remaining claims against IH4, which challenged other actions IH4 took after purchasing the property, for failure to state a claim. (*Id.*, pp. 26-29.) Ms. Smith's petition for rehearing was denied, and the California Supreme Court denied Ms. Smith's petition for certiorari.

In 2012, before ALS conveyed its rights to Nationstar, ALS filed an unlawful detainer action ("First UD Action") against Ms. Smith's tenants at the Property. (Response ¶ 87; Reply ¶ 15.) That action was voluntarily dismissed by ALS with prejudice. (*Request for Dismissal*, Case

---

[3] Ms. Smith managed to obtain a stay of the eviction on March 17, 2015, when IH4 failed to oppose her application. (*Smith II*, pp. 7-8.)

6

No. 12U00373 (Cal. Super. Ct., Los Angeles Cty. Feb. 7, 2013), Smith Decl., Ex. 40, Dkt No. 161-4, ECF p. 148 of 150.) It is not clear from the record why this occurred. Ms. Smith argued for the first time on appeal in *Smith II* that this dismissal with prejudice operates as an adjudication on the merits conclusively establishing that ALS did not have title to the Property. (*Smith II*, p. 12-13, n. 8.) The California Court of Appeal rejected this argument for two reasons. First, such argument was not raised in the trial court and therefore was forfeited as a ground for reversal on appeal. (*Id.*) Second, Ms. Smith had presented the court with a "scant record" that failed to establish that the dismissal was based on ALS's lack of ownership to or title to the Property. (*Id.*)

Due to the extensive amount of litigation brought by Ms. Smith[4] and intervening bankruptcy cases filed by Ms. Smith[5] and by a tenant living at the Property, Ms. Smith asserts that she maintained possession of the Property until May or June 2017. (Response ¶¶ 90, 185, 188.)

---

[4] In addition to this lengthy litigation history, several years ago, while *Smith I* and *Smith II* were still making their way through the California courts, Ms. Smith filed similar proofs of claims against a prior owner of her Note and the matter was litigated through trial before another Court in this District. *ResCap I*, 518 B.R. at 739-40 (sustaining the debtors' objection to all claims asserted by Ms. Smith based on the alleged wrongful foreclosure of the Property, largely due to the expiration of applicable statutes of limitations, except for a timely claim asserted under the California Unfair Competition Law); *ResCap II*, at *1 (disallowing and expunging Ms. Smith's claims under the California Unfair Competition Law after a trial on the merits).

[5] In connection with Ms. Smith's own chapter 13 bankruptcy proceeding, she unsuccessfully sought damages for violation of the automatic stay against IH4 for allegedly seeking to enforce the second unlawful detainer judgment against her. In her unsuccessful appeal of the bankruptcy court's order denying her motion, the Bankruptcy Appellate Panel of the Ninth Circuit described the proceeding as "yet another phase of Ms. Smith's extended campaign to block the foreclosure of a deed of trust on her property. The procedural history is complex, mostly because Ms. Smith is a prolific and determined litigant despite repeated and comprehensive losses, but also because her adversary, IH4, was less diligent than she." *Smith v. IH4*, at *1.

C.       *The Debtors' Bankruptcy and Ms. Smith's Proofs of Claim*

The Debtors filed their chapter 11 petitions on March 24, 2019. Upon the Debtors' motion, the Court set the general claims bar date for June 10, 2019. [*See* Dkt. Nos. 25, 29.] On this deadline, Ms. Smith filed the Claims against ACC[6] and ALS, each in the amount of $11 million. In the declaration attached to her Claims, Ms. Smith explains why she believes the 2011 foreclosure of her Property was wrongful. (*Declaration of Tia Danielle Smith in Support of Proof of Claims Against Aurora Loan Servicing, LLC ("Aurora") and Aurora Commercial Corp. ("ACC")*, dated June 10, 2019 ("POC Decl."), attached to Claim Nos. 20 and 29). She seeks compensatory and punitive damages for slander of title, common law fraud, RICO, mail fraud, declaratory judgment, and injunctive relief "to compel the expungement of the false documents from the public record." (*Id.* ¶ 29.) She asserts that she holds "viable claims" against successors to the Debtors in litigation on appeal in California, including claims for "tortious interference with contractual relations, abuse of process, cancellation of instruments, and quiet title," and also seeks relief under a variety of California statutes. (*Id.* ¶ 30.)

By their Objection, the Debtors argue that the Claims are barred by res judicata — specifically, the preclusive effect of the *Smith I* and *Smith II* decisions. (Objection ¶¶ 29-30.) In addition, the Debtors assert that the Claims are barred by the applicable statutes of limitations, as they all arise from a foreclosure that occurred in 2011, some eight years ago. (*Id.* ¶¶ 31-35.) The Debtors sort the claims asserted by Ms. Smith into three categories: slander of title, fraud, and civil RICO. The statutes of limitations for slander of title and fraud are three years under California law. (*Id.* ¶¶ 32-33 (citing Cal. Civ. Proc. Code § 338(d) & (g) (West 2019).) The statute of limitations for civil RICO claims is four years. (*Id.* ¶ 34 (citing *Agency Holding Corp.*

---

[6]     Although asserted against both Debtors, the Claims relate solely to actions taken by ALS.

8

*v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987)).)  Finally, the Debtors assert that, even if not barred by res judicata and the applicable statutes of limitations, the Claims are without merit.  (*Id*. ¶¶ 36-44.)

Ms. Smith responds to the Debtors' Objection, asserting that she has set forth legally sufficient claims against the Debtors and notes that a proof of claim is entitled to a presumption of validity.  (Response ¶¶ 136-38.)  She argues that her Claims are not barred by res judicata, because the first valid final judgment on the merits was the dismissal with prejudice of the First UD Action, which occurred before the final judgments in either *Smith I* or *Smith II*.  (*Id*. ¶¶ 144-50.)  In essence, she claims that this adjudication invalidates anything that happened afterwards and establishes her continuing ownership of the Property.  Ms. Smith also asserts that her Claims are not time-barred, citing California Code of Civil Procedure section 319, which prescribes actions arising out of the title to real property unless the person prosecuting the action was "seized or possessed of the premises in question within five years before" filing the action.  Cal. Civ. Proc. Code § 319 (West 2019);[7] (Response ¶ 158 (citing *Robertson v. Super. Ct. of Marin Cty.*, 109 Cal. Rptr. 2d 650 (Cal. Ct. App. 2001)).)  Ms. Smith argues that the statute of limitations did not begin to run until she was evicted, and the Property was taken from her,

---

[7] The full text of the statute reads as follows:

> No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out of the same, can be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted, or the defense is made, or the ancestor, predecessor, or grantor of such person was seized or possessed of the premises in question within five years before the commencement of the act in respect to which such action is prosecuted or defense made.

To be "seized" of real property means "[p]ossession of a freehold estate in land; ownership." SEISIN, *Black's Law Dictionary* (11th ed. 2019).  Ms. Smith also cites to section 336(a), which does not appear to apply here, as it pertains only to public debt and to actions other than actions for the recovery of real property.  Cal. Civ. Proc. Code §§ 335, 336a (West 2019).

9

"which occurred no earlier than May 16, 2017 and no later than June 2, 2017." (Response ¶ 187.) Ms. Smith also argues that she retained "equitable title, ownership and right of possession" in the Property even after the foreclosure. (*Id.* ¶ 191.) She argues that the conduct of ALS constitutes a "continuous offense," and therefore the statute of limitations has not expired. (*Id.* ¶ 194.) She also argues, quite creatively, that the Property is stolen property, which "remains stolen property, no matter how many years have transpired from the date of the theft." (*Id.* ¶ 195.)

Ms. Smith declares that she is seeking a judicial declaration cancelling the recorded instruments that resulted in her loss of the Property, including the Deed upon Sale. (*Id.* ¶ 202.) She also seeks cancellation of these instruments to remove the cloud on her title to the Property. (*Id.* ¶¶ 203-09.) She compares the Deed upon Sale to a fraudulent "breeder document" in the world of identity theft, because it was the basis for obtaining all other documents necessary to extinguish her rights to the Property. (*Id.* ¶¶ 210-13.) She declares that this document is fraudulent for a variety of reasons, (*Id.* ¶¶ 237-53), and challenges the subsequent documents transferring title to the Property as well. (*Id.* ¶¶ 262-89.)

Ms. Smith closes out her Response by citing various alleged violations of California civil and criminal statutes and the federal Racketeer Influence and Corrupt Organizations ("RICO") Act arising from the same actions and circumstances relating to the Property. (*Id.* ¶¶ 290-314.) The crux of Ms. Smith's argument is that the Debtors and others stole the Property from her. Ms. Smith states that because there is a disagreement between the parties as to the facts in this case, there should be discovery and an evidentiary hearing, followed by further briefing on her Claims. (*Id.* ¶¶ 315-323.)

10

The Debtors have attempted to respond thoughtfully to each claim and argument alleged by Ms. Smith. Simply put, the Debtors urge that nothing in her Response overcomes the application of res judicata to her Claims, which are barred as a matter of law. (Reply ¶¶ 6-14.) The Debtors emphasize that Ms. Smith's argument about the res judicata effect of the First UD Action was presented to the California Court of Appeal in the *Smith II* action and was rejected. (*Id*. ¶¶ 15-17.) The Debtors assert that the statute of limitations also bars the Claims, that further litigation would unnecessarily diminish the Debtors' estates, and that there is no need for discovery[8] and an evidentiary hearing, as the Claims fail as a matter of law. (*Id*. ¶¶ 18-32.) The Debtors assert that the Court can take judicial notice of the prior decisions regarding the Property and disallow and expunge the Claims as a matter of law. (*Id*. ¶¶ 33-36.)

The Court held a hearing on the Objection on October 23, 2019. (Transcript of Oct. 23, 2019 Hrg. ("Tr.") [Dkt. No. 227].) Counsel to the Debtors appeared and presented oral argument to the Court. Ms. Smith appeared telephonically and argued at length on her own behalf. The Debtors asked that the Court take judicial notice of Exhibits A through D of the Darnell Declaration, including the third amended complaint filed in *Smith I*; the opinion of the California Court of Appeal in *Smith I*; the verified complaint filed in *Smith II*; and the California Court of Appeal opinion in *Smith II*. (Tr. 24:1-25:3.) Ms. Smith did not oppose this request. (Tr. 25:4-11.) The Debtors assert that all legal theories and causes of action advanced by Ms. Smith boil down to her attempt to undo the November 2011 foreclosure of the Property. (Tr. 26:2-6.) The Debtors argue, persuasively, that Ms. Smith's Claims are barred, first and foremost by the *res judicata* effect of the judgments of the California courts in *Smith I* and *Smith II*. (Tr. 26:11-

---

[8]   Ms. Smith has propounded lengthy discovery requests in anticipation of the Court allowing discovery to proceed on her Claims. (Reply, Exs. 2-7.)

11

28:10.) The Debtors further argue that even if not barred by res judicata, the Claims are barred by the applicable statutes of limitations and fail to state a claim. (Tr. 28:11-17.)

Ms. Smith presented two arguments at the hearing. First, she explained that she is not challenging the 2011 foreclosure, because there was no foreclosure of the Property in 2011. (Tr. 29:5-16.) Her argument, in effect, is that because the 2011 foreclosure was allegedly improper, it had no effect, and she is still the owner of the Property. Second, Ms. Smith argued that because the very first judgment entered by a California court in the saga of litigation surrounding the Property was the order dismissing, with prejudice, the first unlawful detainer action, in fact *this* judgment controls. (Tr. 32:13-33:8.) She seems to be arguing that the judgment dismissing the unlawful detainer action (but not any subsequent judgment) should be given res judicata effect. She asserts that the first dismissal with prejudice conclusively determines that ALS has no right to the Property. At the end of the hearing, Ms. Smith asked the Court to specifically review the First UD Action, the judgment, and "the law that surrounds that case" before making a decision. The Court assured Ms. Smith that it would. (Tr. 42:6-10.)

## DISCUSSION

The doctrine of res judicata bars courts from reconsidering the judgments of prior tribunals. "Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time, and it encourages parties who lose before one tribunal to shop around for another." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1298-99 (2015). After all, "[o]ne trial of an issue is enough." *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78 (1939). Federal courts give state court judgments the same preclusive effect they would be given in the courts of that state where the judgment was issued. *Conopco, Inc. v. Roll Int'l Corp.*, 231 F.3d

82, 87 (2d Cir. 2000). Accordingly, the judgments of the California courts are applicable here, and are dispositive.

California courts view the doctrine of res judicata as encompassing both claim preclusion, which bars "a second suit between the same parties on the same cause of action," and issue preclusion, which bars the re-litigation of "issues in the second action [that] were actually litigated and determined in the first action." *People v. Barragan*, 83 P.3d 480, 492 (Cal. 2004) (citations omitted); *see also Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 348 (Cal. 2010); *Colombo v. Kinkle, Rodiger & Spriggs*, 35 Cal. App. 5th 407, 416 (Cal. Ct. App. 2019).

Claim preclusion arises if the second suit involves: "(1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 386 (Cal. 2015) (citations omitted). Issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *Id*.

When claim preclusion applies, it bars matters that were within the scope of the prior action as well as matters that are "related to the subject matter and relevant to the issues" such that they "*could* have been raised." *Boeken v. Philip Morris*, 230 P.3d at 355 (citation omitted, emphasis in original); *accord Colombo v. Kinkle*, 35 Cal. App. 5th at 416 ("[C]laim preclusion bars not only . . . issues that were actually litigated but also issues that could have been litigated.").

California courts apply the "primary rights theory" to "determine whether two proceedings involve identical causes of action for purposes of claim preclusion." *Boeken v. Philip Morris*, 230 P.3d at 348 (citations omitted). A "cause of action" for res judicata purposes

13

means "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Id*. at 348. Even if a litigant raises multiple legal theories to support relief, "one injury gives rise to only one claim for relief." *Id*; *accord Slater v. Blackwood*, 543 P.2d 593, 594 (Cal. 1975) ("[T]he invasion of one primary right gives rise to a single cause of action.").

Perhaps not surprisingly, several courts have been faced with cases similar to the one before this Court. In the wake of the 2008 financial crisis, countless homeowners asserted that their property had been wrongfully foreclosed upon by a party without the legal right to do so. Courts have consistently held that this wrong constitutes a single cause of action for purposes of res judicata under California law. *E.g.*, *Johnson v. JPMorgan Chase & Co*., 695 F. App'x 218, 219-20 (9th Cir. 2017) ("[Plaintiff]'s attempt to distinguish the primary right at issue in the instant action and the 2009 action is entirely unpersuasive. Both actions focused on the same primary right — [Plaintiff]'s right to ownership of the property — and the same alleged harm to that right — Chase's purportedly wrongful foreclosure based on an invalid Deed of Trust. The district court correctly held that res judicata barred [Plaintiff]'s action."); *Tobin v. Nationstar Mortg., Inc.*, No. 2:16-cv-00836-CAS(ASx), 2016 WL 1948786, at *6 (C.D. Cal. May 2, 2016) (concluding that "plaintiff's claims for wrongful foreclosure, breach of the covenant of good faith and faith dealing, equitable estoppel, and violations of California Bus. & Prof. Code § 17200 involve the same primary right as plaintiff's claims in the State Action, such that there is an identity of claims for res judicata purposes"); *Poulson v. Bank of Am. N.A.*, No. ED CV 14-1534 FMO (JPRx), 2015 WL 756949, at *4 (C.D. Cal. Feb. 23, 2015) ("Here, the claims asserted in the present action arise from the same primary right asserted in the State Action. The primary

14

right at issue is plaintiffs' right to the Property. In both actions, plaintiffs complain of the same harm: the wrongful foreclosure of the Property."), *aff'd*, 675 F. App'x 650 (9th Cir. 2017).

Here, it is crystal clear, based on the record of Ms. Smith's prior actions and applicable California law, that the Claims are barred by res judicata and the preclusive effect of the final judgment of the California court in *Smith I*. The Claims and *Smith I* involve the same primary right — the right to be free from unlawful foreclosure. Both ALS and Ms. Smith were parties to *Smith I*. The judgment in *Smith I* is a final judgment on the merits.

Moreover, the conclusion that *Smith I* precludes Ms. Smith from bringing any further claims arising out of the foreclosure of the Property has already been decided in a second judgment that is also entitled to res judicata effect, *Smith II*. The California Court of Appeal held as follows:

> Plaintiff's claims in this action cannot be divided from the primary right she sought to vindicate in *Smith I*, because plaintiff's purported interest in the property is necessarily premised on her claim that the November 2011 foreclosure sale was unlawful. Although her claims challenge the post-foreclosure conveyances and other events occurring after Aurora acquired the property at the trustee sale, plaintiff cannot show this conduct injured her unless she can first demonstrate that the foreclosure sale was unlawful and that she maintains an interest in the property to be vindicated by these claims. One injury gives rise to only one claim for relief, but the only injury plaintiff can properly allege is the loss of her property interest at the foreclosure sale.

(*Smith II*, pp. 20-21.) The *Smith II* court was faced with a request that Ms. Smith be declared "the rightful owner of [the] Property" and claims "for cancellation of instrument, quiet title, conversion, and fraudulent conveyance." (*Id*., p. 21.) These are the exact same claims that Ms. Smith asserts in her Claims here. As *Smith II* rightly (and preclusively) held, these claims are barred by the preclusive effect of *Smith I*. Simply put, enough is enough.

While most of Ms. Smith's arguments are addressed to the merits of her precluded claims, Ms. Smith does make one argument challenging the application of res judicata in this

15

case. She argues that the judgment of the California court in the First UD Action is a final judgment on the merits that conclusively determines that she is the rightful owner of the Property. Ms. Smith asserts that this decision alone should be afforded res judicata effect and that it somehow erases the legal proceedings that occurred afterwards. This argument fails for three reasons.

First, this is an argument that not only could have been raised in *Smith I* and *Smith II*, it was *actually raised* and was squarely rejected by the California Court of Appeal in *Smith II*. (*Smith II*, pp. 12-13, n. 8.) That court's determination of the issue settles the matter, as *Smith II* is entitled to res judicata effect in this Court.

Second, Ms. Smith misstates the law on purportedly inconsistent judgments. Courts in the United States do not follow a "first in time" rule, as Ms. Smith proposes, but rather a "last in time" rule. *See, e.g.*, *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (citing *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1526 (9th Cir. 1985)). When a court is faced with two or more inconsistent judgments, the judgment that is binding on the subsequent court is the decision that is "last in time." *Id.* at 322-23; *accord In re Gates*, 187 B.R. 426, 430 (Bankr. N.D.N.Y. 1995) ("Where there are two inconsistent judgments and each would be entitled to preclusive effect if it stood alone, the later judgment controls in a third action."). This is true *even if* a court believes that the later decision was wrong. *Robi v. Five Platters*, 838 F.2d at 322. One reason courts have given for the "last in time" rule is that "the most recent court to decide the matter may have considered and rejected the operation of the prior judgment as res judicata, and its decision should be treated as res judicata on the preclusive effect of the prior judgment." *Id.* at 323. The "last in time" final judgment in Ms. Smith's actions is *Smith II*,

16

and if there were a prior inconsistent judgment, *Smith II* would nonetheless be the judgment entitled to preclusive effect.

Third, Ms. Smith's argument is premised on the notion that the final judgment dismissing the First UD Action with prejudice is entitled to preclusive effect and bars any subsequent challenges to her title to the Property. Not so. While Ms. Smith is correct that a dismissal with prejudice can "invoke[e] the principles of res judicata," *Torrey Pines Bank v. Super. Ct. of San Diego Cty.*, 216 Cal. App. 3d 813, 822, 265 Cal. Rptr. 217 (Cal. Ct. App. 1989), a judgment of any kind in an unlawful detainer action "usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title, or to adjudicate other legal and equitable claims between the parties." *Vella v. Hudgins*, 572 P.2d 28, 30 (Cal. 1977) (citations omitted).

Unlawful detainer actions are summary proceedings in California, "involving only claims bearing directly upon the right of immediate possession." *Pelletier v. Alameda Yacht Harbor*, 188 Cal. App. 3d 1551, 1557, 230 Cal. Rptr. 253 (Cal. Ct. App. 1986); *Von Beltz v. Bentley Homes, LLC*, No. B252408, 2014 WL 4388392, at *3 (Cal. Ct. App. Sept. 5, 2014) ("A judgment in an unlawful detainer action generally has limited res judicata effect because of the summary nature of such a proceeding."). The caselaw is clear that "for an unlawful detainer proceeding to provide res judicata or collateral estoppel effect to subsequent litigation, there must first be the opportunity for a full and fair litigation of the claim or issue before the unlawful detainer court." *Stein v. Braum Inv. & Dev., Inc.*, 244 F. App'x 816, 818 (9th Cir. 2007); *accord Pelletier v. Alameda*, 188 Cal. App. 3d at 1557 ("Legal and equitable claims—such as questions of title and affirmative defenses—are not conclusively established unless they were fully and fairly litigated in an adversary hearing."); *Coates v. Singh*, No. 1:14-CV-1910-LJO-SKO, 2016 WL 110442, at

17

*6 (E.D. Cal. Jan. 11, 2016); *Thomas v. Hous. Auth. of The Cty. of Los Angeles*, No. CV 04-6970 (MMM) (RCx), 2005 WL 6136432, at *9 (C.D. Cal. June 3, 2005).

The judgment in the First UD Action was a voluntary dismissal. The issue of title was not litigated; indeed, no issues were litigated. Even if this Court were the first court to address this argument on a blank slate, Ms. Smith's argument would fail.

The Court has considered Ms. Smith's other arguments, and they are without merit. Because the Court concludes that the Claims are barred by res judicata, it need not address the Debtors' arguments with respect to the statutes of limitations or the underlying merits of Ms. Smith's claims.

Accordingly, the Claims are disallowed and expunged in their entirety.[9]

Dated: New York, New York
      January 2, 2020

                                          /S/ Shelley C. Chapman
                                          HON. SHELLEY C. CHAPMAN
                                          United States Bankruptcy Judge

---

[9] It would appear that this Court is the twelfth court to address Ms. Smith's claims with respect to the Property. Her litigation against those whom she believes wrongfully deprived her of the Property has consumed the better part of a decade and a substantial amount of judicial resources, involving at least one bench trial, one jury trial, five lengthy written opinions, and a remarkable number of rulings and judgments. And yet Ms. Smith continues to pursue legal action on these same claims. At a certain point, the exercise of due process rights ends and the pursuit of vexatious litigation begins. As the Supreme Court and numerous courts of appeal have recognized, "courts may resort to restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities." *In re Martin-Trigona*, 9 F.3d 226, 228 (2d Cir. 1993). This relief may take different forms, from "completely foreclosing the filing of designated categories of cases" to "subjecting a vexatious litigant to a 'leave of court' requirement with respect to future filings." *Id.* at 228-229. Ms. Smith would be well advised to close out her litigation campaign involving the Property. While a litigant is entitled to her day in court, she is not entitled to unlimited days in court to rehash the same issues over and over again.